On Remand from the Alabama Supreme Court
This case is before this court on remand from the Supreme Court of Alabama.
This court affirmed a summary judgment entered in favor of Scott Berry ("Scott") on claims asserted by Johnston-Tombigbee Furniture Manufacturing Company, Inc. ("Johnston-Tombigbee"), in an amended complaint. Johnston-Tombigbee Furniture Mfg. Co.v. Berry, 937 So.2d 1029 (Ala.Civ.App. 2004) ("Johnston-Tombigbee I"). In reaching its holding, this court determined, among other things, that the claims asserted in the amended complaint did not relate back, pursuant to Rule 15(c), Ala. R. Civ. P., to the date of the filing of Johnston-Tombigbee's original complaint against Scott.[1]Johnston-Tombigbee I, supra. On certiorari review, the Supreme Court of Alabama reversed that determination, holding that the claims asserted in the amended complaint did relate back to the date of the filing of the original complaint. Exparte Johnston-Tombigbee Furniture Mfg. Co., 937 So.2d 1035
(Ala. 2005). Our supreme court remanded the case to this court to "consider further those arguments advanced by Scott that the summary judgment must be affirmed even in the event that the claims in Johnston-Tombigbee's *Page 1049 
amended complaint relate back to the date of the filing of the original complaint." Ex parte Johnston-Tombigbee,937 So.2d at 1047.
The procedural history and facts, as set forth by our supreme court, are as follows:
 "Johnston-Tombigbee sued Scott on October 3, 2001, seeking to reform a deed, or, in the alternative, to quiet title to real property. On April 16, 2003, Scott filed a motion for a summary judgment. The hearing on the summary-judgment motion was set for August 7, 2003, and on August 6, 2003, Johnston-Tombigbee filed a motion to amend its complaint to add claims alleging conversion of corporate property, unjust enrichment, and breaches of fiduciary duties owed to Johnston-Tombigbee. On September 8, 2003, Scott filed a motion for a summary judgment as to the claims asserted by Johnston-Tombigbee in its amended complaint. On September 10, 2003, the trial court entered a summary judgment for Scott as to Johnston-Tombigbee's claims for reformation of a deed, or, in the alternative, to quiet title, without stating a rationale. The trial court also granted Johnston-Tombigbee's motion to amend its complaint. On September 25, 2003, again without stating a rationale, the trial court entered a summary judgment for Scott on the claims alleging conversion of corporate property, unjust enrichment, and breaches of fiduciary duties asserted by Johnston-Tombigbee in its amended complaint. Johnston-Tombigbee appealed to this Court, and we transferred the case to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala. Code 1975.
 "Our review of the record is in accord with the facts set out in the Court of Civil Appeals' opinion:
 "`Reau Berry and Scott Berry are brothers. On January 7, 1988, Reau and Scott each acquired a 50% ownership interest in the stock of a corporation known as Lounora. Lounora owned Johnston-Tombigbee; therefore, by way of their ownership of Lounora, Scott and Reau each owned an equal 50% share of Johnston-Tombigbee. Scott served as the president of Johnston-Tombigbee. At the time Reau and Scott acquired ownership of the companies, Johnston-Tombigbee owned 3,000 acres of land located in Pickens County; that land was used primarily by Johnston-Tombigbee as collateral and for the generation of cash through the harvesting of timber.
 "`In 1989, Reau and Scott learned that 112 acres of land contiguous to the 3,000 acres was available for purchase. The 112 acres of land was owned by Beville Reagan and was known as the "Ziegler Tract." Reau and Scott resolved to purchase the Ziegler Tract with Johnston-Tombigbee's funds. On May 31, 1989, Johnston-Tombigbee issued a check in the amount of $16,800 payable to Beville Reagan for the purchase of the Ziegler Tract; in addition, Reagan was given lifetime "coon hunting" rights to the 3,000 acres owned by Johnston-Tombigbee.
 "`At the time of the purchase of the Ziegler Tract, it was the intent of Reau and Scott to have the title to the property placed in their names rather than in Johnston-Tombigbee's. Scott testified in his deposition that he and Reau had intended to acquire the Ziegler Tract as a personal asset in order to "build some personal portfolio outside of the reach of the assets of Johnston-Tombigbee." Scott further stated that Johnston-Tombigbee's funds were used for the purchase of the Ziegler Tract because in June 1988 he had taken no salary from *Page 1050 
Johnston-Tombigbee and Reau had taken a reduced salary and that they therefore agreed to have the title to the Ziegler Tract placed in their names as "more or less . . . a bonus payment to [themselves]." Reau testified in his affidavit that title to the Ziegler Tract was placed in his and Scott's names individually to allow them to build a personal portfolio. However, he further stated that the property was not considered a personal asset, but rather that it was an asset of Johnston-Tombigbee. Reau also testified that the property was not intended as a bonus payment to him or Scott.
 "`Since the Ziegler Tract was acquired by Reau and Scott, Johnston-Tombigbee has paid taxes on the property, the property has been identified as an asset of Johnston-Tombigbee on the corporate books, and the property has been pledged by Reau and Scott as an asset of Johnston-Tombigbee for the purposes of borrowing money for Johnston-Tombigbee.
 "`On June 30, 2000, Reau purchased Scott's ownership interest in Lounora (and thus his ownership interest in Johnston-Tombigbee) and became the sole owner and new president of Johnston-Tombigbee. Reau contends that he and Scott intended that he would be purchasing all the assets of Johnston-Tombigbee, including the Ziegler Tract, but that Scott has refused to convey his interest in the Ziegler Tract to Johnston-Tombigbee. Scott denies that he and Reau intended that Reau would be purchasing his ownership interest in the Ziegler Tract, and he contends that his interest in the Ziegler Tract was a personal asset given to him as a bonus for taking no salary from Johnston-Tombigbee in June 1988.'"
Ex parte Johnston-Tombigbee, 937 So.2d at 1036-37
(quoting Johnston-Tombigbee I, 937 So.2d at 1031-32).
Although our supreme court held that the claims asserted in Johnston-Tombigbee's amended complaint related back to the date of the filing of the original complaint, that court did not make a determi-nation whether those claims were asserted within the period provided by the applicable statute of limitations. Rather, that court, as did this court upon original submission, analyzed the arguments pertaining to whether those claims related back while "'[a]ssuming that Johnston-Tombigbee's claims accrued on June 30, 2000.'" Ex parteJohnston-Tombigbee, 937 So.2d at 1038 (quotingJohnston-Tombigbee I, 937 So.2d at 1032).
In support of the trial court's summary judgment, Scott maintains that the claims asserted by Johnston-Tombigbee in its amended complaint are barred by the applicable statute of limitations. See § 6-2-38(Z), Ala. Code 1975 (two-year statute of limitations applies to "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section"); andBrooks v. Hill, 717 So.2d 759, 764 (Ala. 1998) ("a claim alleging breach of fiduciary duty is governed by the two-year limitations period of § 6-2-38(0, Ala. Code 1975").[2] Johnston-Tombigbee, however, argues that its claims asserted in the amended complaint were timely asserted, *Page 1051 
and, therefore, that the trial court erred in entering a summary judgment on those claims.
Johnston-Tombigbee's amended complaint, which sets forth the claims at issue, alleges that, with regard to the illegal-conversion/unjust-enrichment claim, "[Scott] used corporate funds that belonged to [Johnston-Tombigbee] to purchase the property in question, and that [Scott] titled the property in part in his individual name and has refused to convey his interest to the corporate plaintiff." In support of its claim alleging loss of corporate opportunities, Johnston-Tombigbee alleged in its amended complaint that "[b]y using corporate funds and assets of [Johnston-Tombigbee] to purchase property for his own individual and personal profit and gain, [Scott] breached his fiduciary duty to [Johnston-Tombigbee]." Johnston-Tombigbee further alleged a claim that "[Johnston-Tombigbee] had an interest in the subject transaction and a reasonable expectancy in said business opportunity," and that "[b]y using corporate assets and funds to purchase the subject property and then title the property in his individual name, [Scott] usurped a corporate opportunity, and, thereby, balked the corporate purpose." In counts six and seven of its amended complaint, Johnston-Tombigbee, without alleging any specific facts, asserted that Scott's conduct amounted to self-dealing and a waste of corporate assets.
Scott argues that Johnston-Tombigbee's claims accrued in 1989, when Johnston-Tombigbee paid for the purchase of the Ziegler Tract and Reau Berry ("Reau") and Scott placed the title to that property in their own names. Johnston-Tombigbee argues that its claims actually accrued in June 2000, when Reau purchased Scott's interest in Johnston-Tombigbee and Scott refused to vest title to the Ziegler Tract in Johnston-Tombigbee. Johnston-Tombigbee insists that its claims are predicated on Scott's refusal to transfer ownership of the Ziegler Tract to Johnston-Tombigbee as a part of the June 2000 transaction in which he sold his interest in Johnston-Tombigbee to Reau.
After carefully reviewing the claims asserted in the amended complaint, however, we cannot agree with Johnston-Tombigbee. The claims asserted by Johnston-Tombigbee, explained above, pertain to Scott's conduct in 1989, when he and Reau used corporate funds to purchase property that they had titled in their individual names. Therefore, unless the applicable statute of limitations for claims based on a breach of a fiduciary duty was tolled, Johnston-Tombigbee's claims are barred as untimely.
Johnston-Tombigbee argues that the applicable statute of limitations was tolled until June 2000, when Scott sold his interest in, and withdrew from his position as president of, Johnston-Tombigbee. Johnston-Tombigbee cites JeffersonCounty Truck Growers Ass'n v. Tanner, 341 So.2d 485
(Ala. 1977), in support of its argument. In that case, our supreme court stated that "a corporate director is a quasi trustee, and as long as the fiduciary relationship between him and the corporation exists, the statute of limitations will not run against a claim based on his wrongdoing." JeffersonCounty Truck Growers Ass'n v. Tanner, 341 So.2d at 487-88.
However, immediately after stating that the statute of limitations on a corporate director's wrongdoing may be tolled, the court qualified that rule by explaining that "[t]his principle has been applied in cases based on self-dealing where the director himself was responsible for the concealment of facts upon which a claim could be based and where knowledge of those facts [was] solely within the director's control."Jefferson County Truck Growers Ass'n v. *Page 1052 Tanner, 341 So.2d at 488 (citing Greenleaf v.Profile Cotton Mills, 235 Ala. 530, 180 So. 582 (1938), andCoxe v. Huntsville Gas Light Co., 106 Ala. 373,17 So. 626 (1895)). The court went on to affirm the trial court's determination that the statute of limitations had run on the corporation's fraud claim against a former director because the corporation had knowledge "sufficient to provoke inquiry in reasonable minds which would have led to the facts on which the claim is based." Jefferson County Truck Growers Ass'n v.Tanner, 341 So.2d at 488.
Similarly, it is undisputed that Johnston-Tombigbee knew in 1989 that it had paid for the Ziegler Tract and that the property had been placed in the names of Reau and Scott. That knowledge was sufficient to begin the running of the statute of limitations on any claims Johnston-Tombigbee might have asserted as a result of that transaction. We affirm the trial court's summary judgment on the basis that the claims Johnston-Tombigbee asserted in its amended complaint accrued in 1989 and, therefore, that the statute of limitations had run with regard to those claims.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] The trial court entered a summary judgment in favor of Scott with regard to the claims asserted in Johnston-Tombigbee's original complaint, and Johnston-Tombigbee did not appeal the trial court's ruling with regard to those claims.
[2] Johnston-Tombigbee insists that its conversion claim is subject to the six-year statute of limitations set forth in § 6-2-34, Ala. Code 1975. We need not address that issue, because, as discussed later in this opinion, that claim would still be barred as untimely because it accrued in 1989.